UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AUGUSTINE PACHECO and VICKI HANSEN,
for themselves and others similarly-situated,

     Plaintiffs,

v.

HONEYWELL INTERNATIONAL INC.,

     Defendant.

_____/

Case No. 17-cv-5048
Class Action

U.S. District Judge _____

## COMPLAINT AND JURY DEMAND

1.    Plaintiffs Augustine Pacheco and Vicki Hansen sue defendant Honeywell to enforce collectively-bargained promises of Honeywell-sponsored healthcare until age 65 for employees who took early retirement under the Honeywell-sponsored pension plan. Honeywell announced that it plans to terminate the healthcare of more than 320 retirees who are under age 65, and the healthcare of the retirees' families, on January 1, 2018. Plaintiffs sue for themselves and similarly-situated retirees and retirees' spouses, other dependents, and surviving spouses.

2.    The retirees retired under the Honeywell-sponsored pension plan after working at Honeywell manufacturing facilities in Minneapolis (the Stinson facility), Golden Valley, Coon Rapids, Plymouth, and elsewhere in Minnesota (collectively, the "Minnesota facilities").

## Jurisdiction and Venue

3.    This Court has jurisdiction to enforce collectively-bargained retiree healthcare promises, and over this action, under **(1)** Labor-Management Relations Act ("LMRA") Section 301, 29 U.S.C. §185; **(2)** the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(1)(B), (a)(3), (e), and (f); and **(3)** 28 U.S.C. §§1331 and 1337.

4.    Venue is proper in this district, under 29 U.S.C. §185(a) and 29 U.S.C. §§1132(e)(2) and (f), where **(1)** Honeywell does business; **(2)** the Minnesota facilities are located; **(3)** healthcare addressed in this lawsuit is sponsored, administered, and provided by Honeywell; and **(4)** the breaches and ERISA violations that are the subject of this complaint are occurring.

## The Parties

5.    Plaintiffs and class representatives Augustine Pacheco and Vicki Hansen worked at Honeywell and took early retirement under the Honeywell-sponsored pension plan. During their employment, Pacheco and Hansen were members of the production and maintenance collective bargaining unit at Honeywell's Minnesota facilities represented by International Brotherhood of Teamsters Local 1145 ("Teamsters").

6.    Pacheco started working for Honeywell in 1976. He worked at the Golden Valley, Stinson, Coon Rapids, and other now-closed Minnesota facilities.

To ensure retiree healthcare until age 65, Pacheco gave up his full-time Honeywell job and retired at age 55 in July 2012 from the Coon Rapids facility, after more than 35 years of service. He receives an early retirement pension from Honeywell.

7. Pacheco and his wife, Kathleen Pacheco, have had Honeywell-sponsored healthcare since his 2012 retirement. He is a participant and his wife is a beneficiary in the welfare benefit plan created, sponsored, and operated by Honeywell to provide healthcare to under age 65 retirees from Honeywell's Minnesota facilities and to the retirees' spouses, dependents, and surviving spouses. He will turn 65 in April 2022. The Pachecos live in Fridley, Minnesota.

8. Vicki Hansen started working for Honeywell in 1977. She worked at the Stinson, Golden Valley, Coon Rapids, and other now-closed Minnesota facilities. To ensure retiree healthcare until age 65, Hansen gave up her full-time Honeywell job and retired at age 55 in January 2013 from the Stinson facility, after more than 35 years of service. She receives an early retirement pension from Honeywell.

9. Hansen and her husband, William Hansen, have had Honeywell-sponsored healthcare since her 2013 retirement. She is a participant and her husband is a beneficiary in the welfare benefit plan created, sponsored, and operated by Honeywell to provide healthcare to under age 65 retirees from Honeywell's Minnesota facilities and to the retirees' spouses, dependents, and

surviving spouses. She will turn 65 in September 2022. The Hansens live in Anoka, Minnesota.

10.     Defendant Honeywell International Inc. is a Fortune 100 company. Honeywell has operations at about 1,250 sites in 70 countries and has annual sales of approximately $38 billion.

11.     Honeywell currently employs about 1,000 Teamsters-represented production and maintenance employees at its Minnesota facilities.

12.     Since the 1950s, Honeywell has been a party to collective bargaining agreements ("CBAs") with the Teamsters which governed the currently operating Minnesota facilities and other Minnesota facilities now closed.

13.     For more than four decades, Honeywell has sponsored and provided healthcare until age 65 for Teamsters-represented employees who took early retirement from the Minnesota facilities under the Honeywell-sponsored pension plan, and for the retirees' spouses and surviving spouses until age 65 and dependents until age 26.

## Summary of Facts

### Honeywell-sponsored retiree healthcare

14.     Teamsters-represented Honeywell employees at the Minnesota facilities with sufficient credited service under the Honeywell-sponsored pension plan and the 2007 and 2010 CBAs were entitled to elect "normal retirement" or

"early retirement." Normal retirement was available to eligible employees at age 65 or older. Early retirement was available to eligible employees with at least 15 years of credited service who were age 55 or older and younger than age 65 at the time of retirement.

15.    Many employees who elected early retirement under the Honeywell-sponsored pension plan receive a reduced monthly pension payment. The amount of the monthly pension reduction for an early retiree depends on the retiree's age and service years at the time of retirement, including whether at the time of retirement the retiree met the "Rule of 85" standard (age 55 + service years = 85 or more). In many circumstances, employees who elected early retirement receive monthly pension payments for the rest of their lives that are below the amounts that the retiree would have gotten if he or she had waited to take normal retirement at age 65.

16.    The following are examples of reductions associated with early retirement under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA. An employee who retired at age 55 with fewer than 30 service years has a 36 percent pension reduction for the rest of his or her life. An employee who retired at age 58 with fewer than 27 service years has a 25.20 percent pension reduction for the rest of his or her life. An employee who retired under the Rule of 85 at age 55 with 30 or more service years has an 18 percent pension reduction. An

employee who retired under the Rule of 85 at age 58 with 30 or more service years has a 7.20 percent pension reduction.

17.    Each Honeywell employee who elected early retirement under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA began to receive Honeywell-sponsored healthcare starting at retirement. Each continues to receive that healthcare if he or she is under age 65 or received that healthcare until he or she turned age 65.

18.    Honeywell currently sponsors and provides retiree healthcare **(1)** for more than 320 former employees under age 65 who elected early retirement under the Honeywell-sponsored pension plan and retired under either the 2007 CBA or the 2010 CBA governing the Minnesota facilities, and **(2)** for each such retiree's family, including the retiree's spouse or surviving spouse and dependents.

**Pre-2007 retiree healthcare practices**

19.    Before the 2007 CBA, the Honeywell-Teamsters CBAs governing the Minnesota facilities did not refer to retiree healthcare, but for decades before the 2007 CBA Honeywell sponsored and provided healthcare until age 65 for Teamsters-represented employees from the Minnesota facilities who elected early retirement under the Honeywell-sponsored pension plan and for the retirees' spouses, dependents, and surviving spouses.

20.    For more than 30 years before the 2007 CBA, Honeywell sponsored and provided healthcare for each early retiree starting at the retiree's retirement during the term of the CBA under which the retiree elected retirement and continuing after the expiration of that CBA, until the retiree turned age 65. Honeywell also sponsored and provided this healthcare for the retiree's spouse or surviving spouse until age 65 and for the retiree's dependent children until age 26.

21.    Before the 2007 CBA, Honeywell distributed documents to Minnesota employees addressing "frequently asked questions and answers regarding retirement." An example is Ex. 1. Honeywell wrote:

Q.    When I reach age 65 my medical coverage ceases for myself. I have a spouse and dependents, what medical coverage will they have?
A.    Medical coverage that you had selected for your spouse and eligible dependents continues until your spouse reaches age 65.

The FAQ documents communicated Honeywell intentions to provide family healthcare until the retirees, and spouses or surviving spouses, turn age 65.

**2001 agreement promising pension benefits "including retiree medical"**

22.    Honeywell and Teamsters incorporated Honeywell's practices of providing Honeywell-sponsored healthcare to pre-65 employees who take an early retirement under the Honeywell-sponsored pension plan into a November 14, 2001 agreement. The agreement addresses employees terminated from Honeywell due to

work restructuring or relocation who elect early retirement. The agreement, Ex. 2, remains in effect.

23.    In the section titled "Insurance Continuation," the agreement, Ex. 2, states that "terminated employees who are eligible to retire" under the pension plan "will be eligible for retiree medical" at retirement.

24.    In the section titled "Pension Benefits," the agreement, Ex. 2, states that a pension-eligible terminated employee "shall receive Pension benefits in accordance with the provisions of the Pension Plan, including retiree medical."

**2007 CBA "Retiree Health Care (Pre 65 only)" promises**

25.    Honeywell and Teamsters agreed in 2007 labor negotiations to memorialize the retiree healthcare practices in promises of Honeywell-sponsored healthcare starting at retirement under age 65 and continuing until age 65. Excerpts from 2007 CBA Article 24 addressing healthcare for retirees and their families are in Ex. 3.

26.    In the section titled "Retiree Health Care (Pre 65 only)," the 2007 CBA states that Honeywell "will provide" family healthcare to each pre-65 retiree and that healthcare will end "after age 65." These terms are in Art. 24, Sec. 7.

27.    The 2007 CBA states that Honeywell "does not provide healthcare benefits for Local 1145 retirees after age 65." These terms are in Art. 24, Sec. 7.

28.     The 2007 CBA states that employees who retired before May 1, 2007 will make healthcare contributions at the levels in effect before the 2007 CBA.  The 2007 CBA states that employees who retired on or after May 1, 2007 will make monthly medical contributions at the levels set by the 2007 CBA.  These terms are in Art. 24, Sec. 4.

29.     The 2007 CBA states that for employees who elect early retirement "after April 30, 2007," Honeywell's "contribution for post retirement health benefits" will be subject to annual limits set at "2.0 times the 2007 cost of Local 1145 retiree medical."  These terms are in Art. 24, Sec. 7.

30.     The 2007 CBA states that the "maximum annual dollar amount contributed by Honeywell for post April 30, 2007 retirees, their dependents, and surviving spouses" for "post retirement health benefits" will be "$20,304 for single coverage and $40,608 for family coverage."  These terms are in Art. 24, Sec. 7.

31.     The 2007 CBA states that the limits on Honeywell's annual retiree healthcare contributions "will not apply" to employees who retired "prior to May 1, 2007."  These terms are in Art. 24, Sec. 7.

32.      The 2007 CBA states that the limits on Honeywell's annual retiree healthcare contributions "will not apply to any year prior to calendar year 2011." These terms are in Art. 24, Sec. 7.  Calendar year 2011 began on January 1, 2011, 11 months after the 2010 expiration of the 2007 CBA.

33. The 2007 CBA promises Honeywell-sponsored healthcare to each employee who retired under the Honeywell-sponsored pension plan and the 2007 CBA, beginning at retirement and continuing until that retiree turned age 65.

34. The 2007 CBA promises Honeywell-sponsored healthcare, without limit on Honeywell's annual contributions, to each employee who retired before May 1, 2007, beginning at retirement and continuing until that retiree turns age 65 and continuing for that retiree's spouse or surviving spouse until that spouse or surviving spouse turns age 65.

35. The 2007 CBA promises Honeywell-sponsored healthcare, with annual limits on Honeywell's contributions, to each employee who retired on or after May 1, 2007, beginning at retirement and continuing until the retiree turns age 65, and continuing for that retiree's spouse or surviving spouse until that spouse or surviving spouse turns age 65.

36. Honeywell provided healthcare for each employee who retired under the Honeywell-sponsored pension plan and the 2007 CBA, who was under age 65 at retirement, with healthcare starting at retirement and ending when that retiree turned age 65, or continuing to date for each retiree not yet age 65, and provided healthcare for each retiree's spouse starting at the retiree's retirement and ending when that retiree's spouse or surviving spouse turned age 65, or continuing to date for each retiree's spouse or surviving spouse not yet age 65.

**Honeywell communications and admissions after agreement to the 2007 CBA**

37.     After agreement to the 2007 CBA, Honeywell distributed a document to Teamsters-represented Minnesota facilities employees with "answers to questions" about the 2007 CBA.  The "answers" document is Ex. 4.

38.     The Honeywell "answers" document, Ex. 4, reads in part:

Q.     What healthcare coverage is provided to retirees?
A.     Local 1145 retirees are eligible for healthcare coverage through Honeywell until age 65. After age 65 they are eligible for Medicare with no subsidy from Honeywell.

39.     The Honeywell "answers" document, Ex. 4, reads in part that the limits on Honeywell's annual healthcare contributions for employees who retired after April 30, 2007 were not expected to "hit until 2018," eight years after the 2010 expiration of the 2007 CBA.

40.     The Honeywell "answers" document, Ex. 4, states in part that an employee who retires before May 1, 2007 is entitled to the healthcare in effect before the 2007 CBA, "until you reach age 65."

41.     The Honeywell "answers" document, Ex. 4, communicates Honeywell's intention that each employee who retired under the Honeywell-sponsored pension plan and the 2007 CBA, and the retiree's spouse or surviving spouse, is each entitled to and would receive Honeywell-sponsored healthcare until age 65.

42.     A Teamsters-represented Honeywell employee would read the 2007 CBA, the Honeywell "answers" document, and other Honeywell documents, and consider practices, and reasonably understand them to communicate Honeywell's intention that each employee under age 65 who retired under the Honeywell-sponsored pension plan and the 2007 CBA was entitled to and would receive Honeywell-sponsored healthcare starting at retirement and continuing until the retiree turned age 65.

43.     A Teamsters-represented Honeywell employee would read the 2007 CBA, the Honeywell "answers" document, and other Honeywell documents, and consider practices, and reasonably understand them to communicate Honeywell's intention that his or her spouse or surviving spouse was entitled to and would receive Honeywell-sponsored healthcare until age 65 and that his or her dependent children were entitled to and would have Honeywell-sponsored healthcare until age 26.

44.     After agreement to the 2007 CBA, more than 100 unit employees under age 65 gave up their Honeywell jobs and took early retirement under the Honeywell-sponsored pension plan and the 2007 CBA, and at retirement each began to receive Honeywell-sponsored family healthcare.

45.     Employees elected early retirement, gave up their Honeywell jobs, and retired under the Honeywell-sponsored pension plan and the 2007 CBA, to ensure

that they would have Honeywell-sponsored healthcare until age 65 and to ensure healthcare for their spouses or surviving spouses or other dependents.

46.     Employees elected early retirement, gave up their Honeywell jobs, and retired under the Honeywell-sponsored pension plan and the 2007 CBA, in reliance on 2007 CBA Art. 24, Honeywell representations and practices, the Honeywell "answers" document, and other Honeywell documents, to ensure healthcare until age 65 and to ensure healthcare for their spouses or surviving spouses or other dependents.

47.     Honeywell knew and expected that employees would elect early retirement, give up their Honeywell jobs, and retire under the Honeywell-sponsored pension plan and the 2007 CBA, in reliance on 2007 CBA Art. 24, Honeywell representations and practices, the Honeywell "answers" document, and other Honeywell documents, to ensure that they would have Honeywell-sponsored healthcare until age 65 and to ensure healthcare for their spouses or surviving spouses and other dependents.

## 2010 CBA "Retiree Health Care (Pre 65 only)" promises and the "Special Retirement Program"

48.     The retiree healthcare promises in the 2010 CBA are identical to those in the 2007 CBA except that the 2010 CBA **(1)** requires employees to comply with Honeywell's "Special Retirement Program" procedures to qualify for Honeywell-sponsored retiree healthcare and **(2)** only applies the dollar limits on Honeywell's

annual retiree healthcare contributions included in the 2007 CBA to employees retiring under the 2010 CBA before May 1, 2010. These terms are in 2010 CBA Art. 24, Sec. 7. Excerpts from Article 24 addressing retiree healthcare are in Ex. 5.

49.     In the section titled "Retiree Health Care (Pre 65 only)," the 2010 CBA states that Honeywell "will provide" family healthcare to each pre-65 retiree and that healthcare will end "after age 65." These terms are in Art. 24, Sec. 7.

50.     The 2010 CBA states that Honeywell "does not provide healthcare benefits for Local 1145 retirees after age 65." These terms are in Art. 24, Sec. 7.

51.     The 2010 CBA states that for employees who take early retirement "after April 30, 2007" and through April 30, 2010, Honeywell's contribution for "post retirement health benefits" will be subject to annual dollar limits set at "$20,304 for single coverage and $40,608 for family coverage." These terms are in Art. 24, Sec. 7.

52.     Honeywell's "Special Retirement Program" procedures require that to qualify for retiree healthcare an employee must **(1)** give Honeywell at least four months "advance written notice of his or her irrevocable decision to retire on a date certain between August 1, 2010 and February 1, 2013" and **(2)** not be terminated for cause before retirement. These terms are in 2010 CBA Art. 24, Sec. 7.

53.    The 2010 CBA set January 31, 2013 as the last day for employees to take early retirement accompanied by Honeywell-sponsored healthcare.  These terms are in Art. 24, Sec. 7.

54.    The 2010 CBA states that **(1)** employees who retire after January 31, 2013 and **(2)** employees who fail to comply with the "special retirement program" procedures are not entitled to Honeywell-sponsored healthcare.  These terms are in Art. 24, Sec. 7.

**The 2011 MOA promises healthcare until the retiree's "65th birthday"**

55.    Honeywell and Teamsters negotiated a 2011 memorandum of agreement ("MOA") resolving grievances about Honeywell outsourcing of stationary engineer work.  The MOA is Ex. 6.

56.    The MOA states that stationary engineer and grievant Les Herman **(1)** "will be considered" to have met the 2010 CBA special retirement program requirements and **(2)** is "entitled" to Honeywell-sponsored retiree healthcare, regardless as to whether he has provided timely advance notice and regardless as to whether he retired before, on, or after February 1, 2013.  Under the special retirement program procedures, employees were to provide four months "advance written notice" of early retirement and were to retire before February 1, 2013 to be entitled to Honeywell-sponsored healthcare.

57.     The MOA states that Herman is entitled to the same Honeywell-sponsored healthcare as other Teamsters retirees for the period "prior to his 65th birthday" and the MOA states that Herman's Honeywell-sponsored healthcare would not cover "any period on or after his 65th birthday."

58.     The MOA communicates Honeywell's intention that Honeywell-sponsored healthcare for those who retired under the Honeywell-sponsored pension plan and the 2010 CBA begins at retirement and continues until age 65 regardless of CBA duration.

59.     Honeywell and Teamsters negotiated other grievance settlements during the term of the 2010 CBA that allowed terminated employees to take early retirement under the Honeywell-sponsored pension plan and the 2010 CBA to ensure that each employee and the employee's spouse and surviving spouse had healthcare until age 65 and each employee's other dependents had healthcare until age 26.

**Honeywell communications and admissions during negotiations and after agreement to the 2010 CBA**

60.     During collective bargaining of the 2010 CBA, Honeywell representatives said to Teamsters representatives that Honeywell wanted four months' notice of an employee's election to take early retirement because Honeywell expected more than 300 under age 65 employees to retire under the

2010 CBA to ensure Honeywell-sponsored healthcare beginning at retirement and continuing until age 65.

61.     During 2010 bargaining, Honeywell representatives said to Teamsters representatives that Honeywell expected that because there would be no Honeywell-sponsored healthcare for employees who retired after January 31, 2013, there would be a high volume of early retirements under the 2010 CBA and said that Honeywell would need four months advance notice to plan, hire, and train replacements for retiring employees.

62.     After agreement to the 2010 CBA, Honeywell labor relations manager and 2010 bargainer Chuck Bengtson told employees that if they retired early under the 2010 CBA and before the February 1, 2013 deadline, the employees were guaranteed healthcare until age 65 and Honeywell could not take this healthcare away.   Bengtson told employees that the 2010 CBA was the last chance for employees to retire with healthcare and to ensure healthcare to age 65 employees must follow the special retirement program requirements.

63.     After agreement to the 2010 CBA, Honeywell human resource director and 2010 bargainer Dave Hanson told employees that if they retired early under the 2010 CBA and before the February 1, 2013 deadline, the employees were guaranteed healthcare until age 65 and Honeywell could not take this healthcare away.   Hanson told employees that the 2010 CBA was the last chance for

employees to retire with healthcare and to ensure healthcare to age 65 employees must follow the special retirement program requirements.

64. After agreement to the 2010 CBA, Honeywell distributed to Teamsters-represented employees a "Pension and Medical" document. This document is Ex. 7.

65. The Honeywell "Pension and Medical" document, Ex. 7, states that retiree "medical insurance" ends at "age 65" when a retiree begins "Medicare."

66. The Honeywell "Pension and Medical" document, Ex. 7, states that a retiree's dependent children are "covered" by the retiree's Honeywell-sponsored healthcare until age 26 and that the retiree's spouse is covered until the retiree turns "age 65." Earlier Honeywell documents, however, state that the retiree's spouse is covered until he or she turns age 65. These earlier documents reflect Honeywell practices with regard to healthcare for retirees' family members.

67. The Honeywell "Pension and Medical" document, Ex. 7, communicates Honeywell's intention that each employee who takes early retirement under the Honeywell-sponsored pension plan and the 2010 CBA is entitled to healthcare starting at retirement and continuing until age 65.

68. After agreement to the 2010 CBA, Honeywell human resource and management officials met with Minnesota facilities employees—in 2010, 2011, and 2012—and explained early retirement under the Honeywell-sponsored pension

plan, Honeywell-sponsored retiree healthcare, and the "Special Retirement Program" procedures required by the 2010 CBA. An example meeting notice is Ex. 8.

69. Honeywell human resource and management officials told employees at meetings that if the employees retired under the Honeywell-sponsored pension plan and the 2010 CBA, and complied with the "Special Retirement Program" procedures, each employee would receive Honeywell-sponsored healthcare starting at retirement and continuing until the retiree turned age 65.

70. Honeywell human resource and management officials told employees at meetings that if the employees retired under the Honeywell-sponsored pension plan and the 2010 CBA, and complied with the "Special Retirement Program" procedures, each employee would be guaranteed healthcare to age 65 and that each retiree's spouses or surviving spouses would have Honeywell-sponsored healthcare until age 65 and that each retiree's other eligible dependents would be covered by the retiree's healthcare.

71. Honeywell human resource and management officials told employees at meetings that under the 2010 CBA, January 31, 2013 was the last day that an employee could retire with Honeywell-sponsored healthcare.

72.	Honeywell human resource and management officials told employees at meetings that under the 2010 CBA an employee who retired after January 31, 2013 would get no Honeywell-sponsored healthcare regardless of age.

73.	After agreement to the 2010 CBA, Honeywell implemented a "Process for Special Retirement Program" and required employees to complete a form electing retirement as a prerequisite to Honeywell-sponsored "subsidized retiree medical."  Honeywell's form is Ex. 9.

74.	In Honeywell's 2012 report to its shareholders, Honeywell said that under the 2010 CBA there would be no Honeywell-sponsored healthcare for employees who retired on or after February 1, 2013.  Honeywell reported that by eliminating healthcare for future retirees as of February 1, 2013, Honeywell reduced its potential "postretirement benefit obligation by $39 million."  Excerpts from the report are in Ex. 10.

75.	Honeywell's 2012 report to its shareholders, Ex. 10, said that Honeywell had "postretirement benefit obligation[s]" for "remaining active union employees still eligible for a retiree medical subsidy."  Those "still eligible" were employees who retired before February 1, 2013 under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA.

76.	After agreement to the 2010 CBA, and before the February 1, 2013 deadline elected early retirement, more than 300 employees gave up their

Honeywell jobs, and retired under the Honeywell-sponsored pension plan and the 2010 CBA. Honeywell provided each of these retirees with Honeywell-sponsored healthcare starting at retirement, ending when a retiree turned age 65 and continuing for retirees still under age 65.

77.     A Teamsters-represented Honeywell employee would read the 2010 CBA, the 2011 MOA, the Honeywell "Pension and Medical" document, and other Honeywell documents, and consider practices, and reasonably understand them to communicate Honeywell's intention that each employee under age 65 who retired under the Honeywell-sponsored pension plan and the 2010 CBA was entitled to and would receive Honeywell-sponsored healthcare starting at retirement and continuing until the retiree turned age 65.

78.     A Teamsters-represented Honeywell employee would read the 2010 CBA, the 2011 MOA, the Honeywell "Pension and Medical" document, and other Honeywell documents, and consider practices, and reasonably understand them to communicate Honeywell's intention that his or her spouse or surviving spouse was entitled to and would receive Honeywell-sponsored healthcare until age 65 and that his or her dependent children were entitled to and would have Honeywell-sponsored healthcare until age 26.

79.     Employees elected early retirement, gave up their Honeywell jobs, and retired under the Honeywell-sponsored pension plan and the 2010 CBA, to ensure

that they would receive Honeywell-sponsored healthcare until age 65 and to ensure healthcare for their spouses or surviving spouses or other dependents.

80.     Employees elected early retirement, gave up their Honeywell jobs, and retired under the Honeywell-sponsored pension plan and the 2010 CBA, in reliance on 2010 CBA Art. 24, Honeywell representations and practices, the Honeywell "Pension and Medical" document, and other Honeywell documents, to ensure that they would have healthcare until age 65 and to ensure healthcare for their spouses or surviving spouses and other dependents.

81.     Honeywell knew and expected that employees would elect early retirement, give up their Honeywell jobs, and retire under the Honeywell-sponsored pension plan and the 2010 CBA, in reliance on 2010 CBA Art. 24, Honeywell representations and practices, the Honeywell "answers" document, and other Honeywell documents, to ensure that they would have Honeywell-sponsored healthcare until age 65 and to ensure healthcare for their spouses or surviving spouses and other dependents.

**Honeywell "Confirmation" of "Pre-65 Retiree Medical"**

82.     Honeywell sent "confirmation" letters to employees who retired under the Honeywell-sponsored pension plan and either the 2007 CBA or the 2010 CBA, addressing "Pre-65 Retiree Medical."  Example letters are in Ex. 11.

83.     The Honeywell "Confirmation" letters specified the birth dates of the retirees and the retirees' spouses and dependent children covered by Honeywell-sponsored healthcare.   The letters identified the Honeywell-sponsored healthcare "coverage" as "Pre-65 Retiree Medical."

84.     Honeywell sent "Confirmation" letters to retirees who were receiving Honeywell-sponsored healthcare during the terms of, and after expiration of, the 2007 CBA and the 2010 CBA.

85.     The Honeywell "Confirmation" letters communicate Honeywell's intention that each employee who retired under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA is entitled to healthcare until age 65 and that the retiree's spouse or surviving spouse is entitled to healthcare until age 65 and that the retiree's dependents are entitled to healthcare until age 26.

**Honeywell plans to "terminate" healthcare for retirees and their families**

86.     Honeywell wrote to Pacheco, Hansen, and more than 300 other retirees on March 27, 2017 that Honeywell plans, on January 1, 2018, to "terminate" the healthcare "coverage currently provided to you and your covered dependents."   An example letter is Ex. 12.

87.     Honeywell wrote that it plans to "terminate" Honeywell-sponsored healthcare because "State or federally run online marketplaces ('exchanges') currently provide an opportunity for individuals to purchase medical coverage from

private health care insurers" and Honeywell retirees "may" qualify for "federal subsidies" if their income is not adequate to buy healthcare from private insurers.

88.    President Trump announced in October 2017 that the federal government would end healthcare subsidies for low-income individuals.  Attorneys General from 18 states, including Minnesota, sued President Trump, the Department of Health and Human Services, and other federal officials and agencies, asserting that ending federal subsidies will cause higher healthcare costs, cause insurance companies to abandon the individual healthcare market, and increase the number of uninsured Americans, burdening the plaintiff-states and causing irreparable harm to vulnerable individuals.  The district court denied the plaintiff-states' motion asking that the federal government be ordered to reinstate and continue the subsidies.  The lawsuit is U.S. Dist. Ct., N.D. CA, no. 3:17-cv-05895.

## Class Action

89.    Pacheco and Hansen bring this ERISA/LMRA action for themselves and for similarly-situated retirees and retirees' spouses, dependents, and surviving spouses under Fed. R. Civ. P. 23(a) and (b)(1) and (b)(2).

90.    The class consists of **(1)** employees who retired under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA, from the Teamsters-represented unit at Honeywell's Minnesota facilities, and who receive or are eligible to receive Honeywell-sponsored healthcare until age 65, and who are under

age 65, and whose healthcare Honeywell intends to terminate on January 1, 2018 and **(2)** retirees' spouses, dependents, and surviving spouses who receive or are eligible to receive Honeywell-sponsored healthcare and whose healthcare Honeywell intends to terminate on January 1, 2018.

91.    All class members are entitled to Honeywell-sponsored healthcare under the CBAs governing Honeywell's Minnesota facilities and as participants or beneficiaries in the Honeywell-sponsored ERISA-regulated employee welfare benefit plan which provides healthcare to retirees and their families.

92.    Honeywell wrote to at least 320 retirees who retired under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA, notifying them that Honeywell will terminate their healthcare on January 1, 2018.  An example letter is Ex. 12.

93.    Honeywell lists approximately 320 retirees to whom Honeywell sent its March 27, 2017 letter.  Honeywell's list is Ex. 13.

94.    The class includes at least the 320 retirees to whom Honeywell sent its March 27, 2017 letter, Ex. 12-13, and in addition, an unknown number of retirees' spouses, dependents, and surviving spouses.

95.    The class is so numerous that joinder of all class members is impracticable.

96. There are questions of law and fact common to the class, including questions about the lawfulness under ERISA and LMRA of Honeywell's planned or actual termination of collectively-bargained retiree healthcare.

97. Pacheco's and Hansen's claims are typical of those of the class, as all the claims arise under CBAs and the ERISA-regulated welfare benefit plan covering retirees and retirees' spouses, dependents, and surviving spouses, and are informed by Honeywell admissions of its obligations to provide Honeywell-sponsored healthcare for retirees and their families.

98. Pacheco's and Hansen's claims address CBA breaches and ERISA and LMRA violations which affect and harm all class members.

99. Pacheco's and Hansen's claims are informed by Honeywell admissions and representations regarding healthcare which affect all class members.

100. Pacheco and Hansen will fairly and adequately protect the class because they have the same claims and interests as other class members, which arise out of the same facts and law and CBAs and welfare benefit plan and they are informed by the same Honeywell admissions and representations, and because they have retained attorneys knowledgeable and experienced in ERISA/LMRA retiree healthcare class action litigation.

101. Honeywell's planned or actual termination of Honeywell-sponsored retiree healthcare adversely affects all class members so that injunctive and other class-wide relief is appropriate.

102. A class action will avoid the burden, expense, inefficiencies, and risks of inconsistent adjudications of individual claims.

## COUNT I–CBA BREACHES

103. Paragraphs 1-102 are incorporated in this count.

104. Honeywell promised Honeywell-sponsored healthcare until age 65 for Pacheco, Hansen, and other class members who retired under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA.

105. Honeywell-sponsored healthcare for plaintiffs Pacheco, Hansen, and other class members vested at the retirement of each class member who retired under age 65 under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA. The Honeywell-sponsored healthcare began for each employee under age 65 at the time of retirement and is to continue until that retiree turns age 65.

106. The CBAs entitle Pacheco, Hansen, and other retirees, and retirees' spouses, surviving spouses, and dependents to Honeywell-sponsored healthcare beginning at each retiree's retirement. The healthcare is to continue for each

retiree, spouse, and surviving spouse until age 65 and for each retiree's dependent child until age 26.

107. Under the CBAs, each retiree's right to Honeywell-sponsored healthcare vested at the time of retirement, with healthcare beginning at retirement to continue for each retiree until that retiree turns age 65.

108. Under the CBAs, each retiree's spouse's or surviving spouse's and dependent child's right to Honeywell-sponsored healthcare vested at the time of the retiree's retirement and is to continue until the spouse or surviving spouse turns age 65 and up to age 26 for each dependent child.

109. Employees who retired under age 65 before May 1, 2007—during the 2007 CBA—are entitled to Honeywell-sponsored healthcare until age 65, subject to retiree-paid monthly premium contributions.

110. Employees who retired under age 65 between May 1, 2007 and April 30, 2010—during the 2007 CBA or during the first three months of the 2010 CBA—are entitled to Honeywell-sponsored healthcare until age 65, subject to retiree-paid monthly premium contributions and subject to the dollar limits on Honeywell's annual healthcare contributions set at $20,304 for single coverage and $40,608 for family coverage.

111. Employees who retired under age 65 during the 2010 CBA on May 1, 2010 or later are entitled to Honeywell-sponsored retiree healthcare, subject to

retiree-paid monthly premium contributions. The dollar limits on Honeywell's annual healthcare contributions do not apply to the retirees who retired under the 2010 CBA on or after May 1, 2010.

112. Honeywell's planned or actual termination of retiree healthcare breaches Honeywell's promises and the CBAs and has caused, and will continue to cause, damage and harm to Pacheco, Hansen, and other class members.

113. Honeywell is liable to Pacheco, Hansen, and other class members for the consequences, damage, and harm caused by Honeywell's planned or actual termination of retiree healthcare and contract breaches.

## COUNT II–ERISA VIOLATIONS AND PLAN BREACHES

114. Paragraphs 1-113 are incorporated in this count.

115. Honeywell's collectively-bargained promises of healthcare for retirees and their families constitute an employee welfare benefit plan ("plan") within the meaning of ERISA, 29 U.S.C. §1002(1).

116. Honeywell is the plan sponsor and plan administrator within the meaning of ERISA, 29 U.S.C. §§1002(16)(A) and (B).

117. Pacheco, Hansen, and other class members are participants in, or beneficiaries of, the plan within the meaning of ERISA, 29 U.S.C. §§1002(7) and (8).

118. The plan entitles Pacheco, Hansen, and other retirees to Honeywell-sponsored healthcare beginning at retirement. The healthcare is to continue for each retiree, spouse, and surviving spouse until age 65 and for each retiree's dependent child until age 26.

119. Under the plan, each retiree's right to Honeywell-sponsored healthcare vested at the time of retirement, with healthcare to begin at retirement and to continue for each retiree until that retiree turns age 65.

120. Under the plan, each retiree's spouse's or surviving spouse's and dependent child's right to Honeywell-sponsored healthcare vested at the time of the retiree's retirement and is to continue until the spouse or surviving spouse turns age 65 and the dependent child turns age 26.

121. Honeywell's planned or actual termination of retiree healthcare is wrongful and violates the plan and ERISA, and is actionable under ERISA, 29 U.S.C. §§1132(a)(1)(B) and (a)(3), which entitle participants or beneficiaries to bring federal civil actions to enforce ERISA rights.

122. Honeywell's planned or actual termination of retiree healthcare breaches Honeywell's ERISA and plan obligations and has caused, and will continue to cause, damage and harm to Pacheco, Hansen, and other class members.

123. Honeywell is liable to Pacheco, Hansen, and other class members under ERISA and the plan for the consequences, damage, and harm caused by Honeywell's planned or actual termination of healthcare and for plan breaches.

## COUNT III–ERISA VIOLATIONS AND FIDUCIARY BREACHES

124. Paragraphs 1-123 are incorporated in this count.

125. Honeywell is the sponsor and plan administrator of the plan providing healthcare for the retirees and their families.

126. Honeywell is a plan fiduciary.

127. As a plan fiduciary, Honeywell has the duty to act in the interests of plan participants and beneficiaries.

128. As a plan fiduciary, Honeywell has the duty of fairness, accuracy, and honesty, and the duty to not mislead plan participants and beneficiaries, by expression, implication, or omission, regarding the nature or duration of the participants' and beneficiaries' healthcare and rights under the plan and ERISA.

129. Under ERISA, Honeywell has a duty to disclose to participants and beneficiaries—and to not mislead participants and beneficiaries, by expression, implication, or omission—about circumstances which may result in loss of coverage.

130. Under ERISA, Honeywell has a duty to make disclosures to participants and beneficiaries about the circumstances which may result in loss of

coverage in a manner which may be understood by the average participant and beneficiary.

131. Honeywell communicated to employees taking early retirement under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA, to the employees collectively and individually, and to the employees collectively through Teamsters, that each employee would receive Honeywell-sponsored healthcare starting at retirement and continuing until age 65 for each retiree and each retiree's spouse and surviving spouse and up to age 26 for each retiree's dependent child.

132. Honeywell communicated to employees taking retirement under the Honeywell-sponsored pension plan and the 2007 CBA or the 2010 CBA that their healthcare began at retirement and that they were guaranteed continued healthcare until age 65.

133. Honeywell action, omissions, and representations about retiree healthcare, encouraged and induced employees to end their Honeywell employment and retire early with reduced pension benefits.

134. Honeywell's representations about Honeywell-sponsored retiree healthcare had the purpose and effect of encouraging employees to take early retirement and give up their Honeywell jobs to ensure Honeywell-sponsored healthcare after retirement for employees and their families. But Honeywell now

plans, and asserts authority, to terminate all retiree healthcare, including for retirees and retirees' spouses and surviving spouses and dependents.

135. Honeywell never told employees, participants, or beneficiaries, until March 27, 2017, when it sent its letter, Ex. 12, to retirees and spouses, that Honeywell believed it had the unilateral authority to terminate Honeywell-sponsored post-retirement healthcare regardless of a retiree's or spouse's or surviving spouse's or dependent child's age.

136. Honeywell never told employees, participants, or beneficiaries that Honeywell believed that it was obligated to continue retiree healthcare only for the duration of the 2007 CBA or for the duration of the 2010 CBA.

137. Pacheco, Hansen, and other retirees in the class would not have taken early retirement and given up their Honeywell jobs had Honeywell communicated to them that Honeywell believed it could terminate healthcare regardless of a retiree's or spouse's or dependent child's age.

138. Honeywell's representations, misrepresentations, actions, omissions, and failures to disclose breach Honeywell's fiduciary duties and have caused, and continue to cause, damage and harm to Pacheco, Hansen, and other class members.

139. Honeywell breached its fiduciary duties and is liable under ERISA to Pacheco, Hansen, and other class members for the consequences, damage, and harm caused by Honeywell fiduciary breaches.

# RELIEF

Plaintiffs ask the Court to:

A. Certify the class, appoint plaintiffs Pacheco and Hansen as class representatives, and appoint their counsel as class counsel;

B. Declare that Honeywell's planned or actual termination of retiree healthcare breaches the CBAs;

C. Declare that Honeywell's planned or actual termination of retiree healthcare breaches the employee welfare benefit plan and violates ERISA;

D. Declare that Honeywell's actions, omissions, representations, misrepresentations, and failures to disclose breach its fiduciary duties and violate ERISA;

E. Issue the Court's injunction directing Honeywell to satisfy its contractual promises and its statutory duties to provide retiree healthcare and to maintain and comply with the plan;

F. Direct Honeywell to reimburse and "make whole" each plaintiff and class member for all expenses, losses, bills, insurance premiums, injury, anxiety and distress, and other damages and harm caused by Honeywell's planned or actual termination of retiree healthcare;

G. Direct Honeywell to pay interest on all damages and "make whole" amounts;

H. Direct Honeywell to pay all costs and expenses incurred by plaintiffs, class members, and class counsel in the prosecution of this action;

I. Direct Honeywell to pay class counsel's fees at market rates as measured by attorney fees awarded in similar ERISA/LMRA litigation;

J.   Direct Honeywell to pay such other compensatory, punitive, and exemplary damages and to provide such other legal and equitable relief, as may be warranted; and

K.   Award such other relief as may be warranted by law and equity.

s/John G. Adam
Stuart M. Israel (MI P15359)
John G. Adam (MI P37205)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com
jga@legghioisrael.com

Attorneys for Plaintiffs

s/Katrina E. Joseph
Katrina E. Joseph (MN 0328959)
9422 Ulysses Street NE, Suite 120
Blaine, MN 55434
(763) 267-6146
kjoseph@teamsterslocal120.org

November 7, 2017            Local Counsel for Plaintiffs

## JURY DEMAND

Plaintiffs request a jury trial on all issues triable by a jury.

s/ John G. Adam

Stuart M. Israel (MI P15359)
John G. Adam (MI P37205)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com
jga@legghioisrael.com

Attorneys for Plaintiffs

s/Katrina E. Joseph

Katrina E. Joseph (MN 0328959)
9422 Ulysses Street NE, Suite 120
Blaine, MN 55434
(763) 267-6146
kjoseph@teamsterslocal120.org

November 7, 2017                     Local Counsel for Plaintiffs